RECEIVED

SEP - 6 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| AUSTIN J. BENOIT | * | CIVIL ACTION NO. 04-0438 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Austin Benoit, born December 22, 1950, filed an application for disability insurance benefits on December 14, 2001, alleging disability as of September 1, 2001, due to degenerative disc disease and severe back pain.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

---

[1]Claimant filed a previous application in December, 1995, which was denied through the Appeals Council level. No further appeal was filed.

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Report from Dr. David Jewell dated November 28, 2001.** An MRI revealed L2-L3 and L4-L5 intervertebral disc disease. (Tr. 98). There was borderline to mild central canal stenosis at L2-L3 due to a diffuse bulge of the posterior disc margin, which did not appear significantly changed from the study performed in 1997. Dr. Jewell noted that there was a new superior end plate Schmorl node deformity at L3 and significant degenerative signal changes in the opposing end plates which were not present on the prior exam.

**(2) Records from Dr. Mark St. Cyr dated September 11 to September 16, 2003.** On September 11, 2001, claimant was seen for lower back pain for one month. (Tr. 102). Dr. St. Cyr's assessment was back pain. He stated that claimant was not able to work at that time.

On December 11, 2001, Dr. St. Cyr reviewed test results with claimant. (Tr. 100). Claimant complained that his lower back pain was worse. Dr. St. Cyr referred him to a pain specialist for an injection.

Dr. St. Cyr wrote a note dated September 16, 2003 indicating that claimant was "unable to be gainfully employed due to lumbar stenosis." (Tr. 111).

2

**(3) Physical Therapy Report from a Physical Therapy Clinic of Lafayette, Inc. dated May 8, 2002.**[2] Claimant complained of pain over the lumbar area with radiating pain down the posterior legs to the feet. (Tr. 104). He rated his pain at 5/10, with 0 being no pain. He was placed in a therapy program for three times a week for two weeks.

**(4) Records from Dr. Thomas C. LaBorde dated June 10 to September 18, 2002.** Claimant was referred by Dr. St. Cyr for evaluation on June 10, 2002. (Tr. 106). He stated that he had injured his low back in 1982 while working in the oilfield. He saw Dr. John Cobb, and eventually had low back surgery in 1982. He improved to the point where he was able to work, although he still had persistent back pain. He returned to work in the oilfield, and also worked as a carpenter.

Claimant re-injured his back in 1994 in an automobile accident. He was reevaluated by Dr. Cobb, who prescribed physical therapy and injections. This gave him temporary relief. He had another minor auto accident in 2000, which did not significantly change his back complaints.

At the examination, claimant complained that his pain was constant and most severe in his low back and hip regions. He rated his average pain intensity as 6 out

---

[2]Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

of 10, and severe pain as 8 out of 10. He occasionally noticed radiation of pain into his lower extremities, particularly on the right. At times, the pain radiated into the mid back. The pain was aggravated with higher levels of activity. His medications included Hydrocodone four times a day for pain, Cyclobenzaprine and Diazepam three times a day for muscle spasm, and Aleve once or twice a day for breakthrough pain.

On examination, claimant was 6 feet 3 inches tall and weighed 252 pounds. (Tr. 107). His blood pressure was 148/90.

Head and neck examination revealed no spasm, tenderness or trigger areas in the neck or shoulder. Claimant complained of diffuse tenderness in the lumbosacral paraspinal muscles bilaterally. He had some pain and stiffness with flexion at the waist and lateral bending, and slight restriction associated with pain. He had good flexibility in the cervical spine without pain or restriction.

In the extremities, claimant had full range of motion with complaints of pain at the hip and knee. He was unable to fully extend the hip and knee in the supine position due to low back pain. Straight leg raising caused pain into the hip and low back area beyond 35 to 40 degrees. He had no atrophy or edema. Peripheral pulses were palpable in both feet.

Neurologically, claimant moved all extremities with generally good to normal strength. (Tr. 108). He had no focal motor deficits. He complained of some pain with muscle strength testing in the lower extremities. Pin sensation was somewhat patchy in the lower extremities, although generally intact without obvious deficits. Vibration and position were also intact. Reflexes were trace to absent throughout, and plantar responses were down.

Claimant's gait was stable without any limp. He was able to stand on his heels, toes, tandem walk, squat, and arise without significant difficulty.

Dr. LaBorde's impression was post-traumatic chronic low back and hip pain, post-op lumbar surgery, probable muscular ligamentous or myofascial origin, possible discogenic or radicular component. He recommended a more current neuromuscular diagnostic evaluation, and prescribed Hydrocodone and Baclofen.

On June 18, Dr. LaBorde reported that claimant's EMG and nerve conduction studies were consistent with peripheral neuropathy. (Tr. 110). A bone scan dated June 13 was normal.

Claimant's overall complaints of low back and right leg pain persisted. The medications gave some relief. Dr. LaBorde had claimant sign a pain medication contract.

On September 18, claimant was feeling worse, complaining of low back and right leg pain. (Tr. 109). He was not working or receiving physical therapy. On examination, he had diffuse tenderness in the lumbar region. He had no definite spasms, but a few possible trigger points. He had some decreased range of motion and stiffness in the lower back. His gait was unremarkable without a limp.

Dr. LaBorde increased claimant's Baclofen dosage, continued with Lortab, and added Doxepin at bedtime.

**(5) Claimant's Administrative Hearing Testimony**. At the hearing on March 20, 2003, claimant was 52 years old. (Tr. 116). He testified that he was 6 feet 3 inches tall and weighed about 250 pounds. He stated that his weight fluctuated by about seven or eight pounds.

Claimant testified that he had completed the eighth grade. (Tr. 117). He stated that he could read and write "a little bit." He reported that he last worked in 2001 as a carpenter. (Tr. 118). He had also worked as a truck driver and a forklift operator. (Tr. 119).

Claimant reported that he had stopped working because of lower back problems. He stated that he had had surgery in 1982, but his back problem had worsened over time. He also complained of radiating pain to the bottom of his legs. (Tr. 120). He stated that he had leg pain every day, which lasted about 10 to 15

minutes.

Claimant testified that he was seeing Dr. Mark St. Cyr about every three months. (Tr. 121). He stated that he had last seen Dr. St. Cyr in January. He reported that he was taking Lortab and muscle relaxers, which relieved some of his problems but not all of them. (Tr. 122).

As to restrictions, claimant testified that he could lift 5 to 10 pounds. (Tr. 123). He stated that he could walk and stand about 15 to 20 minutes before having pain. He could sit about 20 or 30 minutes.

Regarding activities, claimant testified that he usually sat around the house all day. He stated that he did not do any household chores or yard work. He reported that he drove, but not every day. (Tr. 124).

Additionally, claimant stated that he helped the children with homework. (Tr. 125). He also read the Bible for about 15 to 20 minutes, and watched television 4 or 5 hours a day. He said that he did not socialize very often. (Tr. 126).

**(6) The ALJ's Findings are Entitled to Deference.** Claimant argues: (1) the ALJ erred in failing to find that he was disabled and entitled to benefits; (2) alternatively, the ALJ erred in failing to find that claimant was disabled for a time and entitled to a closed period of disability benefits; (3) the ALJ erred in finding that claimant's testimony and complaints of pain were not credible, and (4) that there is

new and material evidence pertinent to claimant's claim justifying a remand.

Claimant first argues that he is disabled under the listing at 1.04C (rec. doc. 23, p. 14), which provides as follows:[3]

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C.

While claimant's MRI showed "borderline to mild stenosis," there is no evidence that he met the remaining criteria. (Tr. 98). His treating physician, Dr. LaBorde, did not find any weakness. (Tr. 108). Additionally, he noted that claimant's gait was stable without any limp, and that claimant was able to stand on his heels, toes, and tandem walk without difficulty.

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.* As claimant has not demonstrated that he met the criteria under § 1.04C, the ALJ's finding that claimant's impairment did not meet the listing for spinal disorders is entitled to

---

[3] Claimant also asserts that he suffers from depression. (rec. doc. 23, p. 9). However, there are no medical records indicating that he ever sought treatment for this alleged condition.

deference.

Claimant also argues that the ALJ failed to give proper weight to his treating physician's opinion that he was disabled. (rec. doc 23, p. 9). The record reflects that the ALJ considered Dr. St. Cyr's opinion that claimant was unable to work due to back pain. (Tr. 30, 100, 102, 111). However, the ALJ noted that his statements were conclusory and addressed an issue reserved to the Commissioner. (Tr. 30).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton*, 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id.* (citing *Paul v.*

*Shalala*, 29 F.3d 208, 211 (5ᵗʰ Cir. 1994)). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id.* Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237 (5th Cir. 1994).

Here, the ALJ determined that Dr. St. Cyr's opinion as to claimant's disability was conclusory in nature and not supported by the objective evidence. (Tr. 30). *See Leggett*, 67 F.3d at 566 (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other opinions, objective medical evidence, and claimant's own testimony). The ALJ further noted that such statements "clearly address and issue reserved to the Commissioner." Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." *Frank v. Barnhart*, 326 F.3d 618, 620 (5ᵗʰ Cir. 2003) (citing 20 C.F.R. § 1527(e)(1)). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." *Id.* As the ALJ, not the treating physician, has sole responsibility for determining a claimant's disability status, this argument lacks merit. *Newton*, 209 F.3d at 455.

Claimant also argues that the ALJ erred in assessing his credibility. (rec. doc. 23, pp. 11-13). He submits that he could not work due to his "chronic disabling conditions, combined with his medication side effects." (rec. doc. 23, pp. 9). The record reflects that the ALJ thoroughly analyzed claimant's complaints, but found that the evidence did not support his allegation of total disability. (Tr. 29). Specifically, the ALJ noted that claimant received only episodic treatment for his alleged disabling pain. *See, Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990) (the ALJ may rely upon the lack of treatment as an indication of nondisability); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993).

Additionally, the ALJ considered claimant's complaints regarding the side effects from his medications. (Tr. 29, 130). However, he noted that claimant had failed to report these complaints to his treating physicians. As claimant has failed to produce objective medical evidence to support his subjective complaints regarding the side effects of his pain medication, the ALJ's finding is entitled to deference. *See Williams v. Barnhart*, 31 Fed.Appx. 833, 2002 WL 180706, *1 (5th Cir. 2002);

*Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir.1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.1990).

Next, claimant argues that newly discovered evidence consisting of an MRI report dated November 13, 2003 shows that he is disabled. (rec. doc. 23-2, Exhibit 2). When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

The medical record which claimant submits as new evidence is an MRI report dated November 13, 2003, which shows degenerative disc disease at L2-L3 with a prominent disc bulge, prominent disc bulges at L3-L4, L4-L5, and L5-S1, and

encroachment on the left intervertebral foramen at L2-L3 with lateral disc herniation suggested. (rec. doc. 23-2, Exhibit 2). To warrant remand, the new evidence must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567. As the evidence sought to be submitted by claimant falls outside of the relevant time period and concerns either a subsequently acquired disability or the deterioration of a condition that was not previously disabling, it is not material to this proceeding. The appropriate action regarding these facts is to use the evidence as the basis for a new disability application.

Finally, claimant asserts that there has been no determination that he could hold whatever job he finds for a significant period of time, citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). (rec. doc. 8, p. 11). However, since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). As the court stated in *Frank*:

> Watson requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if [plaintiff] had alleged that her degenerative

13

disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. **At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time.** An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

(emphasis added). *Id.* at 619.

Here, claimant has not demonstrated that his symptoms were of sufficient frequency or severity to prevent him from holding a job for a significant period of time during the relevant period as required by *Watson*. As noted by the ALJ, the objective evidence does not support the severity of the complaints alleged by claimant. (Tr. 30-31). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk

of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION,* **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 5 day of September, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 9-6-05
BY: ___
TO: RED
CMH

15